13-2988SAG to 13-2990SAG

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANTS
## FOR CELLULAR TELEPHONES

JAN 02 2014

### I.  Purpose of the Affidavit

This affidavit is submitted in support of a search warrant for the below listed cellular telephones

seized from Wilbert PEREZ for suspected violations of 21 U.S.C. §846 and 18 U.S.C. 1956 on

November 26, 2013. The cellular telephones are identified as follows:

>1.  **Mac IPhone 5S, Model A1453, IMEI 358759052995460.**
>2.  **Verizon Samsung, Model SCH-U365, MEID HEX: A0000044B560AB.**
>3.  **Verizon Samsung, Model SCH-U365, MEID HEX: A000004517EDC8.**

Your affiant submits that there is probable cause to believe that these cellular telephones

contain evidence of violations of 21 U.S.C. §846, Conspiracy to distribute a controlled substance

and 18 U.S.C. § 1956, Money Laundering.

### II.  Your Affiant

Your Affiant, Robert J. Mignogna, has been a sworn member of the Maryland State

Police for approximately twenty-three years (1990-2001 and 2002-present) and has achieved the

rank of Sergeant and received all training mandated by the Maryland Police Training

Commission.  Your Affiant also served as a Special Agent with the Federal Bureau of

Investigation from September 2001, thru July 2002. Upon successful completion of New Agents

training at the FBI Academy, your Affiant was assigned to and worked at the FBI's Milwaukee

Field Office in Wisconsin. As a result of this experience your Affiant has attended numerous

advanced schools relating to the investigation of criminal activity, including suspect/witness

interviewing, organized crime, racketeering, narcotics identification and trafficking, money

laundering, asset forfeiture, and computer-related crimes.

1

During his career, your Affiant has investigated both state and federal violations, including money laundering, narcotics distribution and trafficking. Your Affiant has conducted numerous multi-jurisdictional investigations involving financial crimes and narcotics violations and, as a result, has seized narcotics and proceeds derived from narcotics distribution. Your Affiant has prepared and executed numerous state and federal search and seizure warrants, worked on Title III court authorized intercepts, seized evidence of both state and federal violations, interviewed suspects, witnesses, and informants, and evaluated evidence obtained during the course of these investigations.

Your Affiant is currently assigned to the Maryland State Police Criminal Enforcement Division and is a duly sworn member of the United States Homeland Security Investigations / HIDTA Drug Money Laundering Initiative and is authorized to investigate narcotics and money laundering activities in the Washington/Baltimore Metropolitan Area as a member of this federal task force.

Based on the foregoing knowledge, training, experience, and participation in investigations involving controlled substances, your Affiant knows that:

Drug traffickers utilize digital cellular telephones to contact their associates, sources of supply (SOS) and their customers. A digital cellular telephone or "Smartphone" (a smart phone is a digital cellular telephone with the added abilities to browse the world wide web, send and receive e-mail and digital media such as pictures and video files, and send MMS or "text" messages) is a portable telephone that may be transported from one place to another and remain operational through the use of a portable battery pack or alternate source. Digital cellular telephones are capable of sending and receiving wire communications, operate as a digital paging and voice mail device, send and receive MMS or "text" messaging, browse the internet,

2



take video movies, still pictures, and voice notes, and allow e-mail to be sent and received. Digital cellular telephones and or "Smart phones" contain "address books" or a series of stored telephone numbers which are associated with names either given or nicknames that are assigned by the user of the phone. Digital cellular telephones are not party lines, and each telephone has an assigned telephone number, which may be changed, much the same way as a regular residential telephone. Calls can be made to, or received from a regular telephone, other cellular phones, paging devices, or other facility that can be contacted by a conventional telephone. Digital cellular telephones, as with digital display pagers, permit drug traffickers to remain in constant communication with one another via voice, text messaging and e-mail.

Your affiant knows that information contained in the memory of this phone will provide investigators with:

- Telephone numbers and digital display codes used by accomplices, aiders and abettors, co-conspirators and participants in these illegal activities;

- Identities of co-conspirators, customers, and criminal associates based upon subscriber information derived from the retrieved phone numbers and names associated with them;

-Stored text and e-mail messages identifying possible co-conspirator;

-Stored digital images and movies, depicting evidence and fruits of the above listed crime.

III.    **Probable Cause**

The information set forth below is based upon my personal observations, the observations of other law enforcement officers, and a review of records as indicated.

1. On Wednesday, November 27, 2013, members of Maryland State Police, Metropolitan Area Drug Task Force (MADTF), a group sponsored by Homeland Security Investigations in Baltimore (HSI Baltimore) were contacted by a representative of Estes

Express Lines regarding two suspicious pallets that were received at their facility on the evening of November 26, 2013. The items in question were being sent from the Estes facility, located at 5101 Washington Blvd, Elkridge, Maryland 21075, to SB Freight c/o LD Trading located at 15930 Valley Blvd, City of Industry, California 91744.

2.  An Estes Express Lines representative, herein after referred to as "Estes Express" reported that he was familiar with the California based shipper "SB Freight," due to an internal investigation in which SB Freight was the intended recipient of multiple shipments that had been intercepted by Estes Express and found to contain extremely large sums of U.S. currency. Estes Express was suspicious of the freight shipment in question when a review of the bill of lading revealed that it contained electronic items; however, a visual inspection of the shipment revealed markings to suggest that it contained shoes. Due to this discrepancy and pursuant to Estes Express internal company policies, they pulled the freight shipment and conducted a more thorough inspection.

3.  Upon opening the contents of one of the pallets, Estes Express found it to contain boxes of shoes. Examination of the second pallet revealed that it contained two filing cabinets wrapped in shrink wrap. Secreted in the filing cabinet drawers were five brown cardboard boxes containing bundles and bundles of United States currency. The currency bundles were bound tightly with rubber bands and packaged in vacuum-sealed plastic storage bags. In all, Estes Express removed and opened five brown cardboard boxes and found them to contain (21) heat sealed bags of U.S. currency. Estes Express then contacted law enforcement.

4

*CJn*
*12.17.13*

4. At approximately 10:00 am, members of the MADTF arrived at the facility and examined the currency in question and the circumstances of its delivery. Cpl. D. McCarthy of the MADTF and his certified K9 "Ace" conducted a scan of the currency that resulted in a positive alert for the presence of narcotics. Cpl. McCarthy #2704 and K9 Ace #3016 (4 year old black German Shepherd) were initially certified by the Maryland State Police as a Narcotic Detection Canine Team on June 9, 2011, after successfully completing 14 weeks (560 hours) of training. K9 Ace was trained to locate and indicate by displaying a passive sit alert to seven (7) distinct odors of narcotics, which are: Marijuana, Cocaine, Heroin, Black Tar Heroin, Hash, Ecstasy, and Methamphetamine. Corporal McCarthy and K9Ace are currently certified as a narcotic detection canine team, having last been certified in November 2013.

5. Your Affiant was contacted and responded to Estes Express to seize the currency for federal forfeiture and assist in the investigation. Your Affiant and Sgt. C. Arminger of the Maryland State Police transported the currency to Loomis Armored Car Service to obtain an accurate count and ready the funds for deposit. This count took approximately three hours to complete and resulted in a final total of $800,035.00. The currency was comprised of the following denominations: (6) fifty dollar bills, (32,867) Twenty dollar bills, (11,238) Ten dollar bills and (6003) five dollar bills.

6. The discovery of this freight shipment by Estes Express was by no means accidental. The Estes Express Ohio terminal alerted authorities to a previous shipment on November 20, 2013, that was found to contain $179,000.00 in U.S. currency. The largest seizure occurred on November 25, 2013, at the Estes Express Chicago Illinois terminal in which

a suspicious freight shipment was identified and found to contain 1.5 million dollars in U.S. currency. The common link that alerted Estes Express to all of the freight shipments, beyond incorrect shipping labels and similar manner of packaging, was LD Trading. All of the seizures had LD Trading as their final destination on their respective bills of lading.

7. Estes Express described the individual who delivered the suspicious pallets as a heavy set Hispanic male, approximately 5-10" in his mid 40's, operating a box truck. Further investigation revealed that the box truck was registered to the Mini U Storage Company, located at 9425 Snowden River Parkway, Columbia, Maryland 21046. Members of the MADTF contacted the Mini U Storage and learned that the truck was rented by Wilbert Rosado PEREZ, Hispanic Male, DOB 05/23/1988, who presented a California Driver's License and who also leased a storage unit (#086).

8. Cpl. M. Murphy #2936 and his certified K9 Mia #3191 subsequently conducted a scan of storage unit #086 that resulted in a positive alert for the presence of narcotics. Detective M. Marks of the MADTF made application for and received a search and seizure warrant for Unit #086, located at the Mini U Storage Company, 9425 Snowden River Parkway, Columbia, Maryland 21046. The warrant was issued by the Honorable, Lisa Johnson, Prince George's County District Court for the State of Maryland. Cpl. Murphy and K9 Mia were certified by the Maryland State Police as a Narcotic Detection Canine Team in December 2012, after successfully completing 9 weeks (360 hours) of training. K9 Mia was trained to locate and indicate by displaying a passive sit alert to seven (7) distinct odors of narcotics, which are: Marijuana, Cocaine, Heroin, Black Tar Heroin, Hash,



Ecstasy, and Methamphetamine. Cpl. Murphy and K9 Mia are currently certified as a narcotic detection canine team, having last been certified in November 2013.

9. A search of storage Unit #086 revealed additional filing cabinets, brown cardboard boxes that contained shoes and shipping pallets. All of these items were similar to the ones delivered to Estes Express that lead to the discovery of the currency.

10. At approximately 6:00 pm, MADTF investigators established surveillance in the area of 8450 Greystone Lane, Columbia, Maryland 21045. There, investigators observed an individual matching the description of PEREZ arrive operating a white Chevrolet Silverado bearing Maryland registration (9BB-3108). A check of Maryland MVA records revealed that the vehicle was registered to Wilbert Rosado PEREZ (DOB 05/23/1988) with a listed address of 8450 Greystone Lane, Apt 26, Columbia, Maryland 21045. (It should be noted that apartment #26 does not exist in the building complex.) PEREZ was observed by investigators to exit this vehicle and enter 8450 Greystone Lane, Apartment #2B. After approximately ten minutes, PEREZ exited the apartment and re-entered the white Silverado. Sgt. Arminger and members of the MADTF immediately approached the Silverado and identified themselves as law enforcement officers.

11. Sgt. Arminger asked PEREZ to exit the vehicle. PEREZ complied and identified himself as Wilbert Rosado PEREZ. When asked if he had any weapons on his person he replied that he did not. PEREZ gave verbal and non-verbal consent, by the act of raising his hands, when asked by Sgt Arminger if he could conduct a weapons frisk.

12. While conducting the weapons frisk, Sgt. Arminger felt several hard objects in PEREZ'S jacket pocket that, without manipulating them, felt like cell phones. PEREZ told Sgt.

Arminger that they were cells phones and willingly removed them from his jacket

pockets and handed them, along with a folded stack of U.S. currency, to an investigator

who was assisting Sgt Arminger.  PEREZ also produced a California Driver's License

that identified him as Wilbert Rosado PEREZ (DOB 05/23/1988).  It should be noted that

this was the same California Driver's License that was presented to rent the box truck and

Mini U Storage unit.

13. Sgt. Arminger explained to PEREZ that he wanted to speak with him about a freight

shipment containing a large amount of U.S. currency that had been seized by

investigators.  PEREZ denied having any knowledge of the freight shipment.  Given the

season and time of night the temperature was very cold outside.  Sgt. Arminger asked

PEREZ if he wanted to move their conversation into one of the investigator's vehicles.

PEREZ willingly agreed and sat in the front seat of a covert sport utility vehicle.

14. Upon entering the vehicle, Sgt. Arminger once again introduced himself to PEREZ and

explained the reason for their contact.  Once again PEREZ denied having any knowledge

of the freight shipment in question.  Sgt. Arminger further explained that investigators

had evidence to suggest that he (PEREZ) made multiple freight shipments from the Estes

Express facility located on Washington Boulevard in Halethorpe, Maryland.  PEREZ

recanted his story somewhat, and said that he did deliver freight shipments to the Estes

Express facility, that he sold shoes and regularly sent shoe shipments to California.

PEREZ was unable to provide any information regarding the recipient of these

shipments.

8



15. PEREZ admitted to delivering a freight shipment the previous day (November 26, 2013) to Estes Express for delivery to California. (It will be noted that this was the $800,035.00 freight shipment in question.)  When asked for the shipping documents, PEREZ said he tore up the bill of lading.  When advised that the shipment in question also contained filing cabinets in which boxes of currency had been secreted, PEREZ replied that he only shipped shoes.  PEREZ went on to say that he regularly purchased shoes in California and shipped them to Maryland for resale.  Sgt. Arminger asked PEREZ why he shipped shoes to California when he just reported buying them in California to be sold in Maryland.  PEREZ hesitated a moment and said they were not selling too well in Maryland.

16. Sgt. Arminger asked PEREZ if he would permit investigators to conduct a search of his apartment (consent search).  PEREZ refused.  When asked if he was concerned about the contents in his apartment, Sgt. Arminger noticed a change in PEREZ'S body language and his eyes began to tear up.  PEREZ told Sgt. Arminger that he had a small amount of cocaine in the apartment, that it helped him to relax.

17. Sgt. Arminger informed PEREZ that investigators were going to obtain a search and seizure warrant for his apartment.  PEREZ was placed under arrest and transported to the Maryland State Police Waterloo Barrack for processing.  At that point, Sgt. Arminger was uncertain if the apartment was occupied and in an effort to prevent the possible destruction of evidence both in the apartment and at other locations as yet unknown, PEREZ was not permitted to make any phone calls.

CPR
12.17.13

18. While investigators maintained surveillance on the apartment, Sgt. Arminger made
   application for a search and seizure warrant. The application was presented to the
   Honorable Sue-Ellen Hantman, District Court Judge, Howard County, Maryland. Judge
   Hantman issued a warrant authorizing the search of the apartment and seizure of evidence
   outlined in the application and affidavit.

19. Pursuant to the search of PEREZ'S apartment, MADTF investigators located and seized
   numerous cell phones, computer devises, U.S. currency, miscellaneous papers, banking
   information, cellophane wrappings, keys and a clear plastic baggie containing a white
   powdery substance, suspected cocaine. This substance was later processed and weighed
   5.4 grams. It was forwarded to the Maryland State Police Crime Lab for analysis. A
   field tested was not performed.

20. The three cell phones, more particularly described in section I, located on PEREZ during
   his initial encounter with MADTF investigators were searched, incident to arrest, at the
   Waterloo Barrack utilizing a Universal Forensic Extraction Device, also known as a
   Cellebrite UFED System.

21. At approximately 1:00 am, PEREZ was released from custody at the Waterloo Barrack.
   Pending further investigation and the results of the Crime Lab analysis of the suspected
   cocaine, PEREZ was not formally charged that evening. When informed that
   investigators were not returning his cell phones at that time, PEREZ simply replied,
   "Ok."

22. On the afternoon of Friday, November 29, 2013, your Affiant received three Cellebrite
   UFED System reports in electronic format from Sgt. Arminger. Your Affiant did not

review these reports or any other information, to include the assigned phone numbers, from the cell phones seized from PEREZ. You affiant did not utilize any information derived from the aforementioned search of PEREZ' cellular telephones to obtain probable cause for this application.

23. On December 3, 2013, the MADTF provided the cell phones, more particularly described in Section I, to HSI and your Affiant who placed them into storage at Homeland Security Investigations. Your Affiant now seeks this warrant in order to conduct an examination of the cell phones in connection with my investigation.

24. IV.   **Conclusion**

Based on my training and experience, in investigating drug trafficking / smuggling organizations, I know that drug trafficker / smugglers involved in the smuggling of large quantities of controlled substances frequently resort to using cellular / digital phones, and more specifically in this case, smart phones to keep in contact with their couriers and superiors and to communicate their locations and advise of their status while transporting drugs in order to shield the shipment of drugs from detection by law enforcement and loss from theft. The phones themselves, have the ability to send several forms of text messaging (both SMS, MMS,) along with the added capabilities of sending and receiving e-mail, store contacts information, photographs, movies, names, e-mail address, phone numbers, bank account information, documents, etc. and internet browsing. I also know that these phone can be utilized as global positioning devices which are used to assist in traveling and can retain trip information, address, and GPS waypoints. For these reasons, the stored text, SMS, MMS, and e-mail messages, alpha-numeric messages and stored telephone numbers, names, and addresses and other stored electronic data not limited to pictures, GPS data and website information, text data, notes, etc.

13-2988SAG    13-2990SAG

are evidence of violations of 21 U.S.C. §846, Conspiracy to distribute a controlled substance and 18 U.S.C. § 1956, Money Laundering.

Therefore, based on the aforementioned facts, I believe that there is probable cause that the seized digital cellular telephones have been used in furtherance of illegal drug trafficking activities in violation of 21 U.S.C. §846 and 18 U.S.C. § 1956, Money Laundering. Further, there is probable cause to believe that names, telephone numbers, stored numeric, and/or text messages, documents, notes, previously transmitted and currently being transmitted to the seized telephones may identify other individuals involved in violations of federal narcotics laws. Therefore, I am seeking authorization to search, access, and retrieve all of the names, telephone numbers, stored numeric, and/or text messages contained, images, website information and all other electronically stored data contained in the below listed phones:

4. **Mac IPhone 5S, Model A1453, IMEI 358759052995460.**
5. **Verizon Samsung, Model SCH-U365, MEID HEX: A0000044B560AB.**
6. **Verizon Samsung, Model SCH-U365, MEID HEX: A000004517EDC8.**

I, Task Force Officer Robert J. Mignogna, affirm under penalties of perjury that the facts and circumstances recounted in the foregoing affidavit are true and accurate to the best of my knowledge.

Robert J Mignogna, Task Force Officer
Homeland Security Investigations

Subscribed and sworn before me on December 18, 2013.

Stephanie A. Gallagher-
United States Magistrate Judge

13-2988SAG 13-2990SAG

## ATTACHMENT A-1

1.    All records contained in:

    **1.    Mac IPhone 5S, Model A1453, IMEI 358759052995460.**

    **. 2.    Verizon Samsung, Model SCH-U365, MEID HEX: A0000044B560AB.**

    **3.    Verizon Samsung, Model SCH-U365, MEID HEX: A000004517EDC8.**

(hereinafter "devices") that relate to violations of the statutes listed on the warrant including:

    a.    lists of customers and related identifying information;

    b.    types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    c.    any information related to sources of narcotic drugs (including names, addresses, phone numbers, or any other identifying information);

    d.    any information recording travel schedules or travel;

    e.    all bank records, checks, credit card bills, account information, and other financial records;

    f.    all of the names, telephone numbers, stored numeric, and/or text messages contained, images, website information.

2.    Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

13-2988SAG to 13-2990SAG   12.17.13

## ATTACHMENT A

The search procedure of the electronic data contained in the above devices, whether performed on site or in a laboratory, or other controlled environment, may include the following techniques:

(a) surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

(b) opening and cursorily reading the first few pages of such files in order to determine their precise contents;

(c) scanning storage areas to discover and possibly recover recently deleted data;

(d) scanning storage areas for deliberately hidden files;

(e) performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are related to names, addresses, or telephone numbers.